CASE 43—INDICTMENT, WAREHOUSEMEN—OCTOBER 14, 1884..

# The Commonwealth v. Mason.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. The repeal of a statute by implication is not favored by the courts.
2. Although the fact of the revision of the statutes raises the presumption. that it was the intention to establish a complete code of laws, the provision of the adopting clause, that statutes of a general nature not repugnant to the revision should remain in force, shows the impossibility of making the revision so complete as to embrace all general legislation.
3. The first paragraph of the indictment contains every allegation against appellee necessary to be made under the act in relation to warehousemen, approved March 6 1869, for fraudulently selling tobacco in violation of his warehouse receipt previously issued to another.
4. The second paragraph of the indictment is not good either under the warehouse act or under the factor's act, approved May 5, 188J. It is defective under the first act because the warehouseman has no authority to issue a receipt to one for the property of another. Under the second act, because it does not allege that the property was held as factor, or that it was disposed of by appellee with intent to defraud the true owner.

P. W. HARDIN, W. J. HARRIS AND HENRY CLAY FOR APPELLANT.

1. Neither the warehouse act nor the factor's act are repealed by the General Statutes. It is immaterial whether the bank obtained a good title or not. If the paper is a warehouse receipt or other voucher, and was issued with felonious intent, the offense is complete.
2. Admitting that the receipt showed that the tobacco belonged to one of appellee's customers, still, under the act of 1880, called the ' Factor's Act," appellee is liable. The revision of the General Statutes did not undertake to embrace in chapter 29 all the law of crimes and punishments. (Cochrane v. Ripy, 13 Bush, 495; General Statutes, chapter 25, "Roads;" Ib., 33, " Elections;" Ib., 47, "Gaming;" Ib., 52, "Husband and Wife;" Ib., 81, " Office and Officer;" Ib., 84, "Peddlers;" Ib., 85, "Penitentiary;" Ib., 89, "Public Buildings;" Ib., 94, "Roads;" Ib., 102, "Small-pox;" Ib., 111, "Vagrants;" Ib., 112, " Weights and Measures;" 10 Bush, 346; 8 Howard, 384; 1 Smith's Leading Cases; Lickbarrow v. Mason, 4 Bush, 334; 2 Dillon, 284; 11 Ohio St. Rep., 317.)

WM. LINDSAY, C. B. SEYMOUR, HARRISON & WADDELL AND KENNEY & KENNEY FOR APPELLEE.

1. Applying the rule laid down by this court in the case of Cochran v.

The Commonwealth v. Mason.

Ripy, 13 Bush, 495, it is impossible, under the averments of the indictment, to bring appellee within the ambiguous provisions of the eighth section of the act. And inasmuch as the statute will not be extended by construction to enlarge property rights or personal obligations for a very much more potent reason, it will not be enlarged to create crimes and inflict infamous punishments.

2. Neither under the warehouse act nor the factor's act has appellee committed any criminal offense. (17 Wisconsin, 382; 4 Bush, 385; 10 *Ib.*, 470; 4 T. B. Mon., 485; 9 Bissell, 396; 11 Bush, 553; 6 Missouri App. Cas., 172; 11 Wisconsin, 333; 43 *Ib.*, 280; 11 Otto, 559; 13 Bush, 498; Bisber & Simmons' Law. of Produce Exchange, sections 168, 169, 170.)

CHIEF JUSTICE HINES DELIVERED THE OPINION OF THE COURT.

In this record there are two indictments against appellee, to which demurrers were sustained. The Commonwealth appeals in each case. As many of the questions presented are applicable to both cases, we will consider them in one opinion, but separately, and in the order in which they appear in the record.

The first indictment charges that appellee, being a warehouseman engaged in the business of receiving tobacco in store and having in store certain hogsheads of tobacco designated by numbers, borrowed of the Louisville Banking Company a sum of money, to secure the payment of which he executed a receipt to the company for this tobacco, and subsequently fraudulently sold the tobacco to others, without the consent of the banking company and without the return of the certificate. The receipt or certificate, as set forth in the indictment, is as follows:

"PEOPLE'S TOBACCO WAREHOUSE, ⎱
LOUISVILLE, KY., March 8, 1884. ⎰

"Received of Louisville Banking Company ten hogs-

vol. lxxxii.—17

| No.—Marks. | |
|---|---|
| H. M. ‡‡ 30  ‡‡ 26 | |
| ‡‡ 33  ‡‡ 29  ‡‡ 32 | |
| ‡‡ 31  ‡‡ 25  ‡‡ 24 | |
| ‡‡ 28  ‡‡ 27 | |

heads of tobacco, in apparent good order, of the corresponding number and marks. Deliverable to bearer upon the return of this receipt, and payment of warehouse charges, Insured under —— policies.

"D. K. MASON & CO."

The indictment charges that the acts complained of were in violation of the seventh section of an act in relation to warehousemen, approved March 6, 1869.

That section reads: "That no warehouseman or other person shall sell or encumber, ship, transfer, or in any manner remove beyond his immediate control, any goods, wares, merchandise, produce, commodity, property or chattel, for which a receipt or voucher shall have been given, without the written consent of the person or persons holding such receipt, and the production of the receipt."

The eighth section provides that any person who shall violate, willfully and knowingly, any one of the provisions of the act or any part of any one of its provisions, shall be fined not exceeding five thousand dollars, and imprisoned in the penitentiary not exceeding five years.

The first question we will consider is whether the act of 1869, upon which the prosecution is based, has been repealed by the General Statutes that went into effect on the first of December, 1873.

The act adopting these statutes provides that all statutes of a general nature in force when the General Statutes go into effect, and which are repugnant thereto, are repealed. This general law in regard to warehouse-

men was in force at the time of the adoption of the General Statutes, and as there is nothing in those statutes in reference to warehousemen or their duties, and no express repeal of the act of 1869, it is in full force in all its features unless repealed by implication, as insisted by counsel for appellee, on the authority of Broadus v. Broadus, 10 Bush. That case, giving it the broadest construction, decides only that when under the head of a subject are grouped provisions in reference to it, which are comprehensive in their character, the presumption arises that the intention of the Legislature was to make such provisions, so grouped, the whole law as to that subject. Such implied repeals are not favored, and although the fact of revision raises the presumption that it was the intention to establish a complete code of laws to be found in this revision, the provision of the adopting clause that laws of a general nature not repugnant to the revision should remain in force, shows that the Legislature understood the impossibility of making the revision so complete as to embrace all general legislation. This provision of the adopting act avoided the necessity of the republication of general laws then in force, and guarded against oversights and omissions necessarily incident to all statute revisions and codifications. This court, in Cochran & Fulton v. Ripy, Hardie & Co., 13 Bush, involving the rights of parties to property for which a warehouse receipt had been issued, held that the act of March 6, 1869, in reference to warehousemen, had not been repealed by the General Statutes, because this was a general law, not repugnant to any thing in the General Statutes, no provision having been made therein as to warehousemen, their

duties or liabilities. But it is insisted for appellee that the only question raised and necessarily decided in that case was that the civil provisions of that statute were not repealed by the adoption of the General Statutes, and that by reason of the fact that crimes and punishments are treated of in the General Statutes under a common head, the criminal and penal provisions are, by implication, repealed, according to the rule applied in the case of Broadus v. Broadus, 10 Bush. There are two reasons why we think the rule in that case can not be made to apply. First, under the head of Crimes and Punishments, in the General Statutes, chapter 29, is not found all the law in that revision on this general subject. For instance, under the heads of "Elections," "Gaming," "Husband and Wife," "Office and Officer," "Peddlers," "Penitentiary," "Public Buildings," "Roads," "Small-pox," "Vagrants" and "Weights and Measures," offenses are defined and penalties are denounced, none of which are found under the head of "Crimes and Punishments." So that the reasoning in the Broadus case, to the effect that under a general head, such as "Wills," all the law applicable to that subject must be found, does not apply in a case where the provisions as to a common subject-matter and properly embraced under a common head are distributed indiscriminately throughout the statute. In the second place the construction contended for by appellee's counsel ought not to be adopted, because the act of 1869 was evidently intended to be and must necessarily be considered as a whole. Without the penal clause in the act it would be inoperative for the main purpose contemplated in its passage. The commercial character

intended to be conferred on warehouse receipts in order to utilize as a basis of credit, commodities not otherwise available, would be destroyed, and thereby the whole object of the law defeated. As it has been held that the civil provisions of the law are in force, and were not intended to be repealed by the General Statutes, it must be presumed that its penal provisions, which are necessary to its effectiveness, were also intended to be adjudged in force, although there is no express declaration to that effect in the case of Cochran & Fulton v. Ripy, Hardie & Co.

The appropriateness of having the penal clause of an act of a general character prescribing duties, in the body of such an act, appears to have been recognized by the Legislature in placing the provisions for punishment of a violation of a law in regard to any specific subject-matter under the general subject designated, instead of under the comprehensive and general head of "Crimes and Punishments," as illustrated by the instances cited from the General Statutes.

It is further insisted for appellee that the demurrer was properly sustained, because the instrument declared on is not a warehouse receipt within the meaning of the statute, because the property is made deliverable to "bearer," instead of to "order." This seems to be based upon the third section of the act of 1869, which provides that "all receipts issued by any warehouseman, as provided by this act, shall be negotiable and transferable by indorsement in blank, or by special indorsement, and with like liability as bills of exchange now are, and with like remedy thereon."

The second section of the act prescribes the only

formality in the execution of a receipt, a compliance with which, it seems to us, with a subsequent fraudulent disposition of the property so receipted for, would render the warehouseman subject to the penal provisions of the law. That section is, "That every warehouseman receiving any thing enumerated in section 1, of this act, shall, on demand of the owner thereof, or the person from whom he receives the same, give a receipt therefor, setting forth the quality, quantity, kind and description thereof, which shall be designated by some mark, and which receipt shall be evidence in any action against said warehouseman."

The receipt in this case complies with all the requirements of the last quoted section as to "quantity, quality and kind," and identifies the property by mark, while the third section says that "all receipts issued by any warehouseman, *as provided by this act, shall be negotiable,*" etc. The negotiability of the receipt exists when there is a substantial compliance with the statute as to description for identification, and it is negotiated by indorsement in blank or by special indorsement. The second section describes the character of the receipt that shall be negotiable, and the third section provides the manner of negotiation.

The second indictment states that appellee, being engaged in receiving tobacco in store as a warehouseman, and in selling tobacco as a factor, had in store a certain described hogshead of tobacco which he pledged to the Second National Bank of Louisville for money loaned him, which tobacco appellee subsequently fraudulently sold, without the consent of the bank, and without the return or production of the receipt issued

to the bank by appellee. The receipt, as set forth in the indictment, reads:

"People's Tobacco Warehouse,  
D. K. Mason & Co., Proprietors,  
Nos. 906, 908, 910, 912 Main Street,  
Louisville, Ky., Dec. 19, 1883.

"Received on storage and for sale, from Mr. J. D. Ryan, one hogshead of tobacco, marked R. & M., No. 62, gross, 1370, tare, 180, net, 1190, cost, $6.50, amount, $77.35, which we will deliver to the order of Second National Bank upon presentation of this certificate.

"Parties storing cotton with us must effect their own insurance. "D. K. MASON & CO."

This indictment is not good either under the warehouse act or under the factor's act, approved May 5, 1880. The warehouse act authorizes a warehouseman to issue a receipt for commodities to the owner or the person from whom such commodities are received, and to issue receipts upon his own property so warehoused. Under that act, a warehouseman has no authority to issue a receipt to one for the property of another in store with him as warehouseman. The receipt shows that the property did not belong to appellee, that it did not belong to nor was it received from the Second National Bank, but in terms the receipt recites that it was "received on storage and for sale from J. D. Ryan." With this notice to the bank, the receipt or certificate was not an instrument that could be used to perpetrate fraud, and, therefore, not within the evil intended to be provided against by the warehouse act.

Is the indictment good under the factor's act? We

think not. The first section of that act provides that "every factor or agent intrusted with the possession of a document of title to merchandise, or with the possession of merchandise, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such factor or other agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money paid or advanced, or negotiable instrument given, or existing security surrendered by such other person."

The seventh section of that act provides that any such factor or agent who shall sell any merchandise intrusted to him "with the intent to defraud the true owner," shall be fined not exceeding one thousand dollars, and confined in the penitentiary not exceeding five years.

The indictment is defective under this act because it does not allege that the property was held as factor, the ownership, or that the property was disposed of by appellee with the intent to defraud the true owner, but, on the contrary, the indictment charges that the property was sold by appellee with the intent to defraud the Second National Bank, besides, upon the face of the receipt there was notice to the bank that appellee was acting, in pledging the property, beyond the scope of his authority, and there was no evidence on the receipt that there were any charges or advancement which would have authorized the pledge.

Judgment is reversed as to the first indictment, and affirmed as to the second.